UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARK ANDREAE,

        Plaintiff,

    v.

CAPITAL ONE, *et al.*,

        Defendants.

Case No. 1:22-cv-618
JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

Mark Andreae disputed $49,606.30 in allegedly fraudulent charges on his Capital One credit card for purchases made at a Saks Fifth Avenue LLC (Saks) store in Texas. But Capital One refused to remove the charges. So Andreae sued Capital One and Saks. Not long after, Capital One made an about-face and credited his account in full. Then, Defendants moved to dismiss.

For the reasons discussed below, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. 11) and **DISMISSES** portions of Andreae's Complaint (Doc. 1) **WITHOUT PREJUDICE**. Specifically, the Court **DISMISSES** Counts II, III, IV, and V in full and **DISMISSES** Count I to the extent that it relies on theories deriving from 15 U.S.C. §§ 1666 or 1666a.

## BACKGROUND

Mark Andreae has a Capital One credit card.[1] (Compl., Doc. 1, #5). In early February 2022, someone used his card's information to buy $49,606.30 worth of

---

[1] Because this matter is before the Court on a motion to dismiss, the Court accepts the allegations in the Complaint as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426,

merchandise and gift cards from a Saks store in Texas. (*Id.*). On February 8, Andreae noticed the charges and called Capital One to tell them that he did not make or authorize the purchases. (*Id.* at #7). A Capital One sales representative told Andreae to file a police report, which he did. (*Id.*).

Then, two days later, Andreae says Capital One mailed him two contradictory letters. The first letter asked him complete and return an attached "Identity Fraud Information form" as it related to the unauthorized purchases. (*Id.*). Andreae completed the form and faxed it back to Capital One on February 25. (*Id.*). The second letter allegedly stated Capital One had "completed its investigation" and "[d]etermined that [Andreae] was liable" for the purchases. (*Id.*). From the allegations, it is unclear why Capital One, on the same day, would have both requested information about the fraud and stated that it had completed an investigation that concluded fraud did not occur.

On July 13 and August 8, 2022, Andreae's counsel sent written demand letters disputing the debt. (*Id.* at #8–9). Still, Andreae received no response from Capital One—either to the Identity Fraud Information form or his counsel's letters. (*Id.*). Given his position that the charges were fraudulent, Andreae refused to make payments on the disputed debt. (*Id.* at #9). Accordingly, Capital One reported his account as "past due" to credit reporting agencies, which dropped Andreae's credit score "from the mid-700s to the low-500s." (*Id.* at #9). As a result, Andreae alleges he

---

430 (6th Cir. 2008). So, in reporting the background here, the Court relies on those allegations as "facts," but does so with the caveat that they are not yet proven.

"suffered emotional distress, including but not limited to sleepless nights, excessive stress, and anxiety." (*Id.*).

Based on these events, Andreae sued Capital One and Saks on October 24, 2022. (*Id.* at #1). Against Capital One, Andreae alleged a Truth in Lending Act (TILA) claim, a breach of contract claim, and breach of the covenant of good faith and fair dealing claim. (*Id.* at #10–17). Under his TILA claim, Andreae pressed three theories of relief. First, Capital One violated 15 U.S.C. § 1643(a)(1)(B) by imposing liability against him in amount greater than $50 for an unauthorized transaction. (*Id.* at #10). Second, Capital One violated 15 U.S.C. § 1666(a)(B)(ii) by failing to properly investigate Andreae's allegations. (*Id.* at #11). And third, Capital One violated 15 U.S.C. § 1666a(a) by reporting Andreae's debt as "delinquent," rather than "disputed," to the credit reporting bureaus. (*Id.*). As for Saks, he alleged an unjust enrichment claim and an Ohio Consumer Sales Practices Act (OCSPA) claim. (*Id.* at #17–24).

Capital One and Saks moved to dismiss Andreae's Complaint on February 10, 2023. (Doc. 11). In that Motion, Defendants sought to dismiss Andreae's breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and OCSPA claims in total. However, Capital One's views about the TILA claim are less clear. On one hand, the Motion says "Count I [the TILA claim] should be dismissed with prejudice"—language which implies dismissing the whole thing. (*Id.* at #66). And the Motion elsewhere seems to speak of dismissing the entire Complaint. (*See id.* at #75). But Capital One's actual arguments only address § 1666 and § 1666a,

3

without mention of § 1643. And in its Reply brief, Capital One suggests the Court should "reduc[e] Count I to the sole claim that Capital One violated Section 1643[.]" (Doc. 18, #123). Based on that language, the Court will assume Capital One's Motion does not seek to dismiss Andreae's TILA claim for relief under § 1643.

Andreae responded that he had alleged meritorious claims. (Doc. 16). In his response, though, Andreae suggested a few major developments had occurred since he filed suit. First, on November 9, Capital One mailed a letter informing Andreae that the company had resolved the claim in his favor and credited his account for the unauthorized charges, fees, and interest. (Doc. 16-2). Then, on November 28, Capital One mailed a letter responding to counsel's previous demand letters. (Doc. 16-3). There, Capital One stated that Andreae had never submitted a claim related to unauthorized transitions while on a call with a Capital One representative.[2] (*Id.*). Still, the company repeated that Andreae's account had been credited for the illegal purchases. (*Id.*). Capital One also reported that it had informed the "Consumer Reporting Agencies" that Andreae's account is "closed as current." (*Id.*).

The matter is now ripe.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a "complaint must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell*

---

[2] This statement is difficult to square with Capital One's prior November 9 letter where the company explicitly referenced resolving his "claim regarding the account balance" in his favor. Perhaps Capital One means Andreae never filed a "claim" specifically via phone. But he alleges he did submit, at Capital One's request, the Identity Fraud Information form.

4

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In making that determination, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)) (internal quotation marks omitted).

## LAW AND ANALYSIS

Andreae's Complaint presents five claims. Against Capital One, he asserts a TILA claim using three theories, a breach of contract claim, and breach of the covenant of good faith and fair dealing claim. (*Id.* at #10–17). Turning to Saks, he asserts an unjust enrichment claim and an OCSPA claim. (*Id.* at #17–24). Save for Andreae's TILA theory under § 1643, Defendants say none are plausibly alleged. As discussed below, the Court agrees.

Start with Capital One's challenges to portions of Andreae's TILA claim. In order to bring a claim related to a billing error under § 1666 or § 1666a,[3] a plaintiff must first provide the creditor with written notice as defined in 15 U.S.C. § 1666(a). *See Conn-Burnstein v. Saks Fifth Ave. & Co.*, 85 F. App'x 430, 431 (6th Cir. 2003). Without this notice, the creditor-defendant's statutory duties are not triggered. *See id.* The notice must:

> (1) set[] forth or otherwise enable[] the creditor to identify the name and account number (if any) of the obligor,
>
> (2) indicate[] the obligor's belief that the statement contains a billing error and the amount of such billing error, and
>
> (3) set[] forth the reasons for the obligor's belief (to the extent applicable) that the statement contains a billing error[.]

---

[3] These statutes are part of the Fair Credit Billing Act, a subsection of TILA. *Baker v. Am. Fin. Servs., Inc.*, No. 3:16-cv-65, 2016 WL 4030964, at *3 (W.D. Ky. July 26, 2016).

5

15 U.S.C. § 1666(a). Further, the plaintiff must send the required notice within sixty days after the creditor-defendant sent the contested statement of account. *Id.* Moreover, he must mail it to "the address disclosed under section 1637(b)(10)," *id.*, which is the address the creditor provided on the billing statement "for the purpose of receiving billing inquiries from the" plaintiff. 15 U.S.C. § 1637(b)(10). Putting that together, to trigger a creditor-defendant's TILA obligations under these sections, a plaintiff must submit (1) written notice containing (2) the required information, and (3) mail that notice to the address given on defendant's statement (4) within 60 days of creditor mailing the statement.

Under that framework, Andreae has not alleged that he submitted proper notice. Recall the challenged purchases occurred in February 2022. After discovering the purchases, Andreae alleges that he *called* Capital One on February 8 to complain, and then *faxed* the company on February 25 a completed copy of the company's Identity Fraud Information form. (Doc. 1, #7). Neither communication meets the requirement that he *mail* his notice to Capital One using the address provided on the statement. Further, even if the Court were to consider the submitted Identity Fraud Information form, that form appears deficient. From what the Court can tell, the form omits some of the information that § 1666(a) requires, such as the amount in dispute. And while Andreae's counsel also sent written notices on July 13 and August 8, those occurred well outside the statutorily imposed 60-day window. (*Id.* at #8). Thus, Andreae never provided Capital One the required notice to trigger the company's obligations under § 1666 or § 1666a. *See, e.g.*, *Middleton v. Rogers Ltd.*, 804 F. Supp.

6

2d 632, 637–38 (S.D. Ohio 2011) (dismissing a plaintiff's § 1666 claim because the plaintiff did not send the defendant proper notice within sixty days).

In reply, Andreae says § 1666(a)'s notice requirements are inapplicable and only 12 C.F.R § 1026.12(b)(3)'s requirements apply.[4] (Doc. 16, #100). Not so. Sure, § 1026.12(b)(3) only requires a cardholder to take reasonable steps to put the card issuer on notice of the loss or theft, and permits the cardholder to give notice in person, by telephone, or in writing. But § 1026.12(b) pertains to limiting a cardholder's liability to $50 for unauthorized purchases. *Id.* § 1026.12(b)(1). That means the regulation appears to derive from 15 U.S.C. § 1643, and Capital One is not challenging Andreae's claim as it pertains to that statutory section. On the other hand, § 1666(a)'s more rigorous notice requirements explicitly apply to claims deriving from § 1666 or § 1666a. *See Conn-Burnstein*, 85 F. App'x at 431.

All that said, the allegations about Capital One's conduct are troubling. After Andreae called on February 8 to discuss the unauthorized charges, he alleges Capital One mailed him a letter directing him to complete and submit its Identity Fraud Information form. (Doc. 1, #7). (Capital One helpfully attached his completed form to its Motion. (*See* Doc. 13-1)). And that form *explicitly* tells the recipient that he can either fax or mail the form back to Capital One, and that "faxing the form is

---

[4] Elsewhere, Andreae also appears to argue he fulfilled his notice obligations under 12 C.F.R. § 1026.12(c)(3)(i) through a good faith attempt to settle the dispute with Capital One. (Doc. 16, #97–98). But that provision concerns disputes between the cardholder (or holder of another open-ended consumer credit plan) *and the seller* over the goods or services purchased in a consumer credit transaction. 12 C.F.R. § 1026.12(c)(1); *see also* 15 U.S.C. § 1666i. Here, Andreae engaged in no relevant transaction with Saks and has no dispute about Saks' merchandise (e.g., concerning its quality).

7

preferred." (*Id.*). So a typical consumer—like Andreae here—who followed those instructions might be forgiven for thinking they had fulfilled their fraud-reporting obligations. Yet Capital One now bases its TILA defense on the supposed deficiencies of *their own form*, a form that the company *requested he complete*. That strikes the Court as suspect.

But whatever one makes of Capital One's conduct, Andreae has not alleged he fully complied with § 1666(a)'s terms. Without allegations to that effect, it appears he never triggered Capital One's duties under § 1666 or § 1666a.[5] Thus Andreae's TILA claim, to the extent it proceeds under those statutes, is not plausibly alleged.

Move on to Andreae's breach of contract claim. Virginia law governs this claim based on the contract's choice-of-law provision.[6] (Doc. 1-2, #36). To allege a breach of contract claim under Virginia law, the plaintiff must allege "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Navar, Inc. v. Fed. Bus. Council*, 784 S.E.2d 296, 299 (Va. 2016). And as Capital One points out, Virginia law limits recovery "to the pecuniary loss sustained."

---

[5] The Court's research has not revealed any statutory exception or equitable doctrine that may be available to excuse Andreae's deficient notice on the facts here. That said, the Court would entertain a motion for leave to file an amended complaint if Andreae believes he can articulate a legally permissible excuse for his failure to give proper notice that overcomes the otherwise-applicable statutory notice requirements.

[6] Andreae appears to ignore Capital One's argument that Virginia law applies; he instead cites Ohio law. (Doc. 16, #100–02). But Andreae never explains why the choice-of-law clause does not control. On its own review, the Court enforces the clause and so applies Virginia law.

*Isle of Wight Cnty. v. Nogiec*, 704 S.E.2d 83, 86 (Va. 2011) (quoting *Sunrise Continuing Care, LLC v. Wright*, 671 S.E.2d 132, 136 (Va. 2009)).

Capital One argues that, now that the company has fully credited his account, Andreae has no remaining pecuniary losses recoverable for any contractual breach. Maybe so, but this argument invokes facts beyond the Complaint; Andreae's Complaint alleged that Capital One demands he pay the charges, fees, and interest tied to the Saks purchases. And as Capital One moved to dismiss under Rule 12(b)(6), the Court typically evaluates only the allegations in the Complaint.

That said, in his Response, Andreae seemingly agrees his account has been credited. Indeed, he does not rely on the charges, fees, or interest that he noted in his Complaint to argue he has suffered pecuniary loss related to his breach of contract claim. Rather, he says that his breach of contract claim will recover for (1) his "time and energy throughout February 2022" to dispute charges, (2) his "costs to send a pre-litigation letter, through counsel," and (3) his "costs to have counsel prepare the Complaint and file this lawsuit" and respond to the Motion to Dismiss. (Doc. 16, #101). Based on these arguments, the Court concludes Andreae waived any argument he could have otherwise raised concerning any outstanding liability on his accounts. *See Jarvis v. Hamilton Cnty. Dep't of Educ.*, No. 1:17-cv-172, 2019 WL 1368618, at *9 (E.D. Tenn. Mar. 26, 2016).

But in looking at the "damages" Andreae references, the Court finds none suffice to plausibly allege a cognizable breach of contract claim. "Time and effort" is not a pecuniary loss and so cannot be recovered in a breach of contract action. *Smith*

9

*v. McLaughlin*, 769 S.E.2d 7, 20 (Va. 2015) ("[R]egardless of how foreseeable non-pecuniary loss flowing from a contractual breach may be, such non-pecuniary injury is not recoverable in a breach of contract claim."). And Andreae's litigation expenses also won't cut it. Andreae's contract contains no attorneys' fees provision. And "in the absence of contractual or statutory liability, attorneys' fees incurred in present or previous litigation between the same parties generally are not recoverable." *Long v. Abbruzzetti*, 487 S.E.2d 217, 220 (Va. 1997). In short, Andreae has not advanced a pecuniary loss that can support his breach of contract claim.

Turn next to Andreae's Ohio-law good faith and fair dealing claim. It goes nowhere. According to the Ohio Supreme Court, "there is no independent cause of action for breach of the implied duty of good faith and fair dealing apart from a breach of the underlying contract." *Lucarell v. Nationwide Mut. Ins.*, 97 N.E.3d 458, 464 (Ohio 2018). So Andreae cannot plausibly allege this claim because it is not cognizable as a standalone cause-of-action.

That leaves Andreae's claims against Saks—one for unjust enrichment and one under the OCSPA. Unjust enrichment occurs when "a person has and retains money or benefits which in justice and in equity belong to another." *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005). The plaintiff must demonstrate "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment[.]" *Id*. Damages are limited to "the amount the defendant benefited." *Bollman v. Lavery Auto. Sales &*

10

*Serv., LLC*, No. 2019CA00025, 2019 WL 4678289, at *5 (Ohio Ct. App. Sept. 24, 2019). But here, Andreae conferred no benefit on Saks. Instead, Capital One paid Saks, and Capital One then sought reimbursement from Andreae, a request it has apparently since dropped.

Andreae responds that he indirectly conferred a benefit on Saks—a benefit that passed through Capital One. (*Id.* at #105–06). Andreae also complains that he lost access to 99% of his $50,000 line of credit and paid attorneys' fees to fight the charges. (*Id.*). But his "indirect conferral" argument cannot square with Andreae's concession that he no longer owes Capital One for the charges, fees, or interest related to the transaction. (*Id.* at #94). If anyone conferred a monetary "benefit" on Saks, it is now Capital One that has done so, not Andreae. And Saks received no conceivable "benefit" from the fact that disputed charges occupied 99% of Andreae's available credit for some period of time or from Andreae paying his lawyers (to sue Saks no less). Thus, he has not plausibly alleged this claim.

Finally, Andreae has no OCSPA claim against Saks. The Act states that "no supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." Ohio Rev. Code § 1345.02(A). A "'consumer transaction' means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." *Id.* § 1345.01(A). And a

11

"'consumer' means a person who engages in a consumer transaction with a supplier." *Id.* § 1345.01(D).

Even assuming the OCSPA applies to transactions that allegedly occurred in Texas, Andreae has not alleged *he* engaged in any relevant "consumer transaction" with Saks. That is, the charges at issue did not arise from any transaction where Andreae was the consumer. Thus, he cannot obtain relief under the OCSPA. *Kotoch v. Grossinger City Toyota*, No. 20-cv-2538, 2022 WL 3597882, at *5 (N.D. Ohio Aug. 23, 2022) ("Plaintiff did not engage in the … transaction in question and, therefore, is not a consumer entitled to relief under this statute.*"); Rose-Gulley v. Spitzer Akron Inc.*, No. 21778, 2004 WL 1736982, at *3 (Ohio Ct. App. Aug. 4, 2004) (holding that a plaintiff had no OCSPA claim against a car dealer when someone had used the plaintiff's information to buy a car without her authorization or knowledge).

Andreae responds that the OCSPA should be liberally construed to include him as an involuntary and indirect consumer. (Doc. 16, #107–08). Yet Ohio courts have already foreclosed that argument. The court in *Rose-Gulley* held that victims of unknown and unauthorized purchases lack standing to sue the supplier under the OCSPA because the victims are not consumers as the Act defines that term. *See* 2004 WL 1736982, at *3. Andreae provides no authority to rebut that. This claim too, then, is not plausibly alleged.

## CONCLUSION

For the reasons discussed, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. 11) and **DISMISSES** portions of Andreae's Complaint (Doc. 1) **WITHOUT**

12

**PREJUDICE**. Specifically, the Court **DISMISSES** Counts II, III, IV, and V in full and **DISMISSES** Count I to the extent that it relies on theories deriving from 15 U.S.C. §§ 1666 or 1666a. This case will proceed on the remaining portion of Count I. Moreover, if Andreae believes he can overcome any of the deficiencies identified above, the Court **GRANTS** him thirty days to move for leave to file an Amended Complaint under Rule 15(a)(2), attaching that proposed Amended Complaint to his motion.

    **SO ORDERED.**

August 11, 2023
**DATE**

    **DOUGLAS R. COLE**
    **UNITED STATES DISTRICT JUDGE**