UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**MARK ANDREAE,**

    **Plaintiff,**

    v.

**CAPITAL ONE,** *et al.***,**

    **Defendants.**

Case No. 1:22-cv-618

**JUDGE DOUGLAS R. COLE**

**OPINION AND ORDER**

Before the Court is Plaintiff Mark Andreae's second attempt to state a claim for relief against Defendant Capital One, N.A.,[1] (Capital One) for breach of contract and for violating provisions of the Fair Credit Billing Act (FCBA), which are found in §§ 161(a) and 162(a) of the Truth in Lending Act (TILA), 15 U.S.C. §§ 1666(a), 1666a(a). The Court previously found Andreae's claims (other than his FCBA claim under § 133 of TILA, 15 U.S.C. § 1643, which Capital One did not challenge) to be deficient but granted him leave to amend, (Op., Doc. 21, #146–47), which he did, (Am. Compl., Doc. 28). Capital One now moves to dismiss again contending that, despite receiving a second bite at the apple, Andreae has not cured the deficiencies previously identified with his breach-of-contract and FCBA claims under §§ 161(a) and 162(a). As detailed below, the Court agrees. So it **GRANTS** Capital One's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 31) and this time **DISMISSES** those claims **WITH PREJUDICE**. And given that disposition, the Court further **DENIES AS**

---

[1] Though the Amended Complaint refers to Defendant as just "Capital One," (Doc. 28, #205, 208), the proper name for the business entity is "Capital One, N.A.," (Doc. 31, #232).

**MOOT** Andreae's Motion to Dismiss Count II of the Amended Complaint (Doc. 34), in which Andreae had sought to sever and to dismiss his breach-of-contract claim.

## BACKGROUND[2]

As recounted in the Court's prior opinion, Andreae was the victim of credit card fraud when an unknown party utilized Andreae's Capital One credit card in early February 2022 to buy $49,606.30 in merchandise from a Houston store owned by Defendant Saks Fifth Avenue LLC (Saks). (Doc. 28 ¶¶ 24–25, 32, #210–11). On February 8, 2022, Andreae called Capital One to provide notice that he had not made that purchase. (*Id.* ¶ 34, #211). The customer service representative told Andreae to contact the police. (*Id.* ¶ 35, #211). And two days later, Capital One sent Andreae a letter about the incident with an enclosed Identity Fraud Information form that contained instructions for filling out and returning the form. (*Id.* ¶¶ 36–37, #211–12; Doc. 33-1).[3] So Andreae filled it out and faxed it back to Capital One on February 25. (Doc. 28 ¶ 41, #212). Oddly, on the same day Capital One sent the letter requesting more information, it also sent Andreae a different letter concluding that no fraud had occurred and that Andreae owed the full $49,606.30. (*Id.* ¶ 38, #212).

---

[2] As this matter comes before the Court on a motion to dismiss, the Court must accept the well-pleaded allegations in the Amended Complaint as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). But in reporting the background here based on those allegations, the Court reminds the reader that they are just that—allegations.

[3] Although the Identity Fraud Information form is not attached to Andreae's Amended Complaint, the Court may consider the form, which Capital One provided, without converting Capital One's motion into one for summary judgment because the "document is referred to in the pleadings and is integral to the claims" and Andreae does not dispute the authenticity of the document, (*see* Opp'n, Doc. 35, #270 (citing the Identity Fraud Information form filed by Capital One)). *Washington v. City of Cincinnati*, No. 1:23-cv-230, 2024 WL 474403, at *2, *7 n.10 (S.D. Ohio Feb. 7, 2024) (citation omitted).

Andreae then retained counsel, who sent demand letters to Capital One and Saks in July and August 2022 disputing the charge. (*Id.* ¶¶ 45–46, #213). But even after doing so, Andreae heard nothing but radio silence. (*Id.* ¶¶ 47–48, #213–14). And his refusal to pay the bill (understandable given his position that the purchase was fraudulent) caused Capital One to declare his account "past due," which tanked his credit score. (*Id.* ¶¶ 49–50, #214).

So Andreae sued on October 24, 2022. (Doc. 1). His initial Complaint raised a TILA claim (citing a TILA provision and two FCBA provisions), a breach-of-contract claim, and a claim for breach of the covenant of good faith and fair dealing against Capital One. (*Id.* at #10–17). And he raised an unjust enrichment claim and a claim under the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*, against Saks. (*Id.* at #17–25). Shortly after the Complaint was filed, on November 9, 2022, Capital One notified Andreae it had investigated the alleged fraud and had resolved the matter in his favor. (Doc. 16-2). And a couple of weeks later, it responded to Andreae's lawyer's demand letters notifying him of the same. (Doc. 16-3).

On February 10, 2023, Capital One and Saks moved to dismiss the Complaint save for Andreae's claim against Capital One under § 133 of the TILA, 15 U.S.C. § 1643.[4] (*See* Doc. 11; Doc. 21, #137–38). The Court agreed. It found that all the

---

[4] As the undersigned previously noted, there is uncertainty in the law as to whether a court may partially dismiss a claim based on its rejection of only some of the theories of liability raised. *Steele v. Cmty. Loan Serv., LLC*, No. 1:23-cv-497, 2024 WL 37116, at *3 (S.D. Ohio Jan. 3, 2024). This comes into play here because in both the initial Complaint and Amended Complaint, Andreae raised a single TILA count identifying three bases for liability—alleged violations of §§ 133, 161, and 162 of the TILA. (Doc. 1, #10–11; Doc. 28, #215–17). Admittedly, all three provisions are contained in the TILA and are governed by the general provisions in

3

challenged claims required dismissal. As is relevant here, the Court dismissed the FCBA claim against Capital One (i.e., the claim arising under §§ 161 and 162 of TILA, *see supra* note 3) because (1) Andreae did not notify Capital One of the fraudulent charge *by mail* as the statute requires, (2) his Identity Fraud Information form did not include all the information § 161(a) requires, and (3) his counsel's demand letters were sent outside the 60-day statutorily imposed window. (Doc. 21, #140–42). And the Court dismissed Andreae's breach-of-contract claim because he had not alleged any cognizable damages under Virginia law—a necessary element of that claim. (*Id.* at #143–44 (noting that Andreae appeared not to contest Capital One's reliance on its decision no longer to hold him liable for the fraudulent charge, which in turn means he suffered no damages, even though that factual detail fell outside the scope of the Complaint)). The Court also dismissed all claims against Saks as failing to state

---

§ 130 applicable to civil actions under the TILA. 15 U.S.C. § 1640. But the best way to read the Amended Complaint is to construe Andreae's allegations as raising *two* distinct claims for relief (one under § 133 of the TILA and one under §§ 161 and 162 of the TILA), even though he nominally raised only one count. *See Steele*, 2024 WL 37116, at *3 (citing Federal Rule of Civil Procedure 8(e), which permits courts "to construe pleadings so as to do justice," as the basis for separating multiple claims when they are contained in one count of a complaint (cleaned up)). The reason for this reading is two-fold. First, §§ 161 and 162 were both added to the TILA as part of the FCBA, Pub. L. No. 93-495, Title III, 88 Stat. 1512 (1974), and each cross-references the other when outlining a creditor's obligations to an obligor for billing errors properly identified, *see* 15 U.S.C. §§ 1666(a), (e), 1666a(a). Second, and importantly, § 133 sets out an express burden of proof applicable only to violations of that section and exclusively delimits the scope of a creditor's liability for the unauthorized use of a credit card. *See* 15 U.S.C. § 1643(b), (d). In other words, the plain language of the provisions in §§ 161 and 162 contemplates that those two sections will work in tandem, while the plain language of § 133 anticipates that violations of that section will be independent of other TILA violations. Thus, when the Court dismissed Count I of Andreae's Complaint to the extent that it invoked §§ 161 and 162 of the TILA, the Court was dismissing the claim Andreae had raised under those sections, but not his § 133 claim. To distinguish the two, the Court will refer to the claim brought under §§ 161 and 162 of the TILA as the FCBA claim, and the claim brought under § 133 as the TILA claim. (*See* Doc. 31, #236 (doing similarly)).

a claim for relief. (*Id.* at #144–46). But the Court granted Andreae thirty days to move for leave to file an Amended Complaint were he able to overcome any of the deficiencies identified. (*Id.* at #147).

Andreae so moved. (Doc. 24). The Court authorized him to file his Amended Complaint (Doc. 28) because Capital One anticipated addressing any legal defects in the proposed Amended Complaint via a motion to dismiss. (12/6/23 Not. Order (citing Doc. 26, #200)). In the Amended Complaint, Andreae re-raised his TILA, FCBA, and breach-of-contract claims against Capital One. (Doc. 28, #214–19). Although he did not seek to amend any of the other claims raised in the original Complaint, Andreae noted that they were dismissed "over [his] Objections," and he argues that "[a]ny removal of any claim, allegation, or Defendant in this Amended Complaint is not a waiver of [his] ability to appeal any issue implicated in the Court's August 11, 2023, Order."[5] (*Id.* at #205, 220). As for the claims Andreae sought to revive, his edits were minimal. For the FCBA claim, Andreae added allegations to support his newly raised theory that Capital One had waived the requirements found in § 161(a). (*Id.* ¶¶60–63, #215). For the breach-of-contract claim, Andreae added an allegation asserting that his prior briefing should not have been construed to suggest he abandoned all claims for damages given he still intended "to assert any damages arising from any outstanding liability on his credit card account(s)." (*Id.* ¶ 80(d), #219).

---

[5] The Court does not opine on whether Andreae has properly reserved his rights. The Court simply notes that Andreae's failure to re-raise his claims against Saks means there are no substantive allegations of liability in the Amended Complaint directed against that defendant. Therefore, the Court will dismiss Saks from this suit with prejudice.

As promised, Capital One again moved to dismiss. (Doc. 31). It argued Andreae's FCBA claim failed as a matter of law because Andreae admitted he did not comply with the statutory requirements found in § 161 and because Capital One maintains it did not waive those provisions. (*Id.* at #236–40). And it argued that his breach-of-contract claim failed for two reasons. (*Id.* at #240–43). First, Capital One contended Andreae had not plausibly made out the damages element of his claim by not "actually alleging that [he] suffered any such [asserted] damages or that there is any outstanding liability," instead stating only his desire to recover damages. (*Id.* at #241–42). Second, Capital One argued that even were damages properly alleged, Andreae failed to allege he performed his obligations under the contract. (*Id.* at #242–43). So Capital One argued these two claims should be dismissed with prejudice. (*Id.* at #243).

Andreae responded with two filings. First, he moved to dismiss the breach-of-contract claim without prejudice under Federal Rule of Civil Procedure 21. (Doc. 34, #263). He explained this decision by noting that "Defendant appears to cite to the correct state of the law," which requires dismissal of the claim. (Doc. 35, #272). But "to make an appellate record," he reiterated that he "disagrees that such law should stand," which he believes suffices to "reserve[] the right to assert as much on appeal." (*Id.* at #271–72). Finally, Andreae argued that his amended FCBA claim need not be dismissed because the notice that § 161(a) requires can be waived and the well-pleaded allegations reveal Capital One has done so. (*Id.* at #268–71). Capital One has since replied, in which it rehashed its FCBA arguments and its request that

6

Andreae's breach-of-contract claim be dismissed with prejudice. (Doc. 36, #278–82). The time has since passed for Andreae to file a reply in support of his Rule 21 motion to dismiss. Thus, the motions are ripe for review. *Inge v. Rock Fin. Corp.*, 388 F.3d 930, 935 n.4 (6th Cir. 2004).

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing plausibility, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (cleaned up).

## LAW AND ANALYSIS

### A.  Andreae's FCBA Claim

Begin with the FCBA claim. While Andreae amended his complaint, the new allegations do not address the central defect the Court identified in its previous Opinion and Order—Andreae's failure to allege that "he fully complied with § 16[1](a)'s terms[,] … [which means] he never triggered Capital One's duties under § 16[1] or § 16[2]." (Doc. 21, #140–42). Even in his opposition to dismissal, Andreae does not contend that he met the statutory requirements. (Doc. 35, #269 ("Plaintiff

7

does not dispute the statutory requirements.")). Instead, he tries a new tack: arguing that the allegations show that Capital One *waived* the requirements set forth in § 161(a). (*Id.* at #269). So the dispute before the Court is not over whether the Amended Complaint plausibly alleges Andreae complied with the FBCA, but whether it plausibly alleges that *Capital One* waived those provisions and whether those provisions are in fact subject to such a waiver.

Start with the latter issue: can a party waive statutory requirements? The answer is yes. As the Supreme Court announced—in no uncertain terms—over 150 years ago, "[a] party may waive any provision, either of a contract *or of a statute*, intended for his benefit." *Shutte v. Thompson*, 82 U.S. (15 Wall.) 151, 159 (1872) (emphasis added) (concluding that the party had waived his objections that a deposition should have been rejected by the district court because it was taken without his notice and not in compliance with the applicable federal statute and thereby finding no error in the district court's admission of that deposition testimony). And lest one think this case has been relegated to the dustbin of history, the Supreme Court and lower courts have continued to reaffirm the viability of this authority. *E.g.*, *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995) ("[A]bsent some affirmative indication of Congress' intent to preclude waiver, we have presumed that statutory provisions are subject to waiver[.]"); *accord Sec'y, U.S. Dep't of Labor v. Preston*, 873 F.3d 877, 886–87 (11th Cir. 2017) (determining that a congressional act's statute of repose may be expressly waived); *United States v. Magouirk*, 468 F.3d 943, 947–51 (6th Cir. 2006) (affirming the district court's determination that defendant implicitly

8

waived his right to have the United Sentencing Guidelines be only advisory as well as his right to have the district court take the related statutory factors set forth in 18 U.S.C. § 3553(a) into consideration in making its sentencing decision). This authority supports Andreae's position that § 161(a) may be implicitly waived.

Capital One disagrees. That said, its challenge to one's ability to waive the FCBA's provisions was raised in its reply. (Doc. 36, #280). Accordingly, the Court could decline to reach this belated argument. *Dates v. HSBC*, No. 1:24-cv-81, 2024 WL 860918, at *6 (S.D. Ohio Feb. 29, 2024). Even so, it fails on the merits.

For starters, Capital One suggests that the fact that courts have often dismissed claims when plaintiffs have failed to hew closely to § 161(a)'s terms is a reason to find that its provisions cannot be waived. (Doc. 36, #281–82). Not so. That courts demand strict compliance with the FCBA as a prerequisite to recovery under the statute when such compliance is not waived merely shows that a party must cross his t's and dot his i's when the FCBA's provisions are in play. But it does not address the predicate question that arises here—can a party *implicitly waive* those provisions? And for that question, the default rule is that a statutory provision is "presumptively waivable," unless *Congress* provides an "affirmative indication" to the contrary, such as by inclusion of an "express waiver clause." *Mezzanatto*, 513 U.S. at 201. Here, Capital One points to nothing in the statutory text of § 161(a) that provides an "affirmative indication" that waivers are not permitted. *Id.*

Second, Capital One's argument that Andreae has failed to identify a specific case directly on all fours with this one, (Doc. 36, #280)—that is to say, a case holding

9

that a creditor may implicitly waive the FCBA's notice provisions—is a non-starter. Andreae need not identify an identical case to raise a valid legal argument that a creditor can waive the FCBA's provisions. As explained above, ample, well-established authority holds that statutes are presumed to be waivable; that caselaw strongly supports Andreae's position here. Against that backdrop, Capital One's failure to identify a textual basis for concluding that Congress intended to preclude such waivers of the FCBA's provisions leads the Court to find that such waiver is permissible.

But finding that Capital One *can* waive the FCBA provisions does not answer the separate question whether Andreae has validly alleged that Capital One *did* implicitly waive them here. Waiver is an "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993). And an implied waiver requires conduct that evinces both knowledge of the right in question and an unequivocal intention to relinquish that right by taking actions inconsistent with retaining it. *United States v. Lawrence*, 735 F.3d 385, 437 (6th Cir. 2013); *accord Sandler v. All Acquisition Corp.*, 954 F.2d 382, 385 (6th Cir. 1992) ("The party's actions must evince in some unequivocal manner an intent to waive, and must be inconsistent with any other intent." (cleaned up)); *see also Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 460 (9th Cir. 2023). Thus, implied waiver is not to be found lightly. *E. Tenn. Baptist Hosp. v. NLRB*, 6 F.3d 1139, 1144 (6th Cir. 1993) ("It is well established that waivers of statutory rights must be 'clear and unmistakable.'" (citation omitted)). And Andreae, as the party claiming waiver, will ultimately bear

the burden of showing it, *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir. 2003), so at the pleading stage, he must point to facts at least plausibly suggesting that he will be able to do so, *Rudd v. City of Norton Shores*, 977 F.3d 503, 511–12 (6th Cir. 2020) ("The factual allegations will suffice if they plausibly suggest that he can meet the elements of his claim, and allow [the court] to draw the reasonable inference that the defendant[] would be liable if [he] could prove his alleged facts." (cleaned up)).

Andreae points to two factual allegations he believes reveal Capital One's implied waiver of § 161(a): (1) Capital One's investigation of the alleged fraud after he called to provide notice of the improper charge; and (2) its request that Andreae fill out and submit the Identity Fraud Information Form. (Doc. 35, #269–70 (referencing Doc. 28 ¶¶ 38, 60–62, #212, 215)). The problem for him is that neither act, whether considered alone or in combination, *clearly* or *unmistakably* evinces Capital One's intent to dispense with the FCBA's requirements—let alone, constitutes an action inconsistent with Capital One's desire to have Andreae comply with the statute's provisions. Even reading the Complaint in the light most favorable to Andreae, the Court struggles to see how these allegations suggest anything close to an implied waiver. At most, he has alleged that Capital One (wisely) sought to inquire into an allegation that someone used its services to commit fraud by seeking more details from the consumer who raised the complaint. But without more, nothing about that inquiry suggests that in undertaking it, Capital One also meant to waive its statutory rights under the FCBA. Simply, there is nothing clearly or unmistakably

11

inconsistent—let alone, inconsistent at all—about Capital One's actions and the requirement that to raise a valid FCBA cause of action, a party must provide written notice to the creditor of the bill he disputes. So the Complaint fails to allege that Capital One implicitly waived the FCBA's notice requirements.

Andreae does not even meaningfully dispute this. He merely laments that Capital One sent mixed signals about what to do, which he believes absolves him of the responsibility of complying with the FCBA. (*See, e.g.*, *id.* at #270 ("How is a consumer supposed to know what the proper action to take is when their contract says one thing and they are told to do another?")). This argument does not work. For one thing, Andreae

> fails to appreciate … that waiver is a unilateral concept. A finding of waiver by [Capital One] looks only to the acts of [Capital One], binds only [Capital One], does not reach out to affect [his] rights … . As noted … in *Morgan* [*v. Sundance, Inc.*], "[t]o decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party." [596 U.S. 411, 417 (2022)]; *see also Royal Air Props., Inc. v. Smith*, 333 F.2d 568, 571 (9th Cir. 1964) ("But no detriment to a third party is required for waiver, it is unilaterally accomplished.").

*Hill*, 59 F.4th at 469. And for another, Andreae has not cleared the high hurdle of showing that Capital One's actions in requesting a completed Identity Fraud Information Form should somehow be understood as Capital One excusing other forms of notice required by the FCBA. Absent such a showing, Andreae cannot make out a valid claim that Capital One *clearly* and *unmistakably* implicitly waived its statutory right to FCBA notice. Admittedly, the Court sticks to its previous observation that "the allegations about Capital One's conduct are troubling" and that "a typical consumer—like Andreae here—who followed th[e] [Identity Fraud

12

Information Form] instructions might be forgiven for thinking [he] had fulfilled [his] fraud-reporting obligations." (Doc. 21, #141–42). But as explained, concerning behavior does not an implied waiver make.

In short, Andreae's milquetoast allegations about Capital One's decision to investigate the fraud by requesting additional information from him fall short of creating a reasonable inference that it waived its FCBA rights. And considering the FCBA's provisions still apply, Andreae has failed to state a claim for relief because he "has not alleged he fully complied with § 16[1](a)'s terms" and therefore did not "trigger[] Capital One's [FCBA] duties." (Doc. 21, #142; *see* Doc. 35, #269 (acknowledging as much)). Thus, as this is the second time Andreae has failed to raise a viable claim for relief under the FCBA, the Court will dismiss this claim with prejudice.[6]

**B.     Andreae's Breach-of-Contract Claim**

That leaves Andreae's breach-of-contract claim. Both parties agree dismissal is required under existing law.[7] (Doc. 31, #240–43; Doc. 35, #271–72). The only apparent dispute is whether the dismissal should be with or without prejudice. (*Compare* Doc. 31, #243, *with* Doc. 34, #263). The problem with a dismissal without

---

[6] As noted above and as was the case with its motion to dismiss the original Complaint, Capital One does not challenge the viability of Andreae's TILA claim, which alleges Capital One violated § 133. So, as before, (Doc. 21, #137–38, 147), his TILA claim under § 133 survives dismissal.

[7] Again, *see supra* note 4, the Court does not opine on whether Andreae is correct that despite his agreement that the existing Virginia caselaw compels the dismissal of his breach-of-contract claim, he has properly "reserve[d] the right" to challenge the dismissal and related caselaw on appeal. (Doc. 35, #272).

13

prejudice here is that this is not the first time Andreae's breach-of-contract claim has been challenged as legally deficient. Capital One's first motion to dismiss the breach-of-contract claim raised exactly the same arguments as its current motion to dismiss the Amended Complaint. (*Compare* Doc. 11, #66–68, *with* Doc. 31, #240–43). The Court found this claim wanting once. (Doc. 21, #142–44). And though he had a chance to make substantive changes to the allegations to remedy the identified deficiencies, Andreae instead added a single conclusory allegation expressing his desire to recover damages "arising from any outstanding liability on his credit card account(s)." (Doc. 28 ¶ 80(d), #219). That is not enough. *Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do[.]"). As this is the second go-around, dismissal with prejudice is appropriate.

Andreae tried to avoid that result by moving to drop the claim without prejudice, a motion he filed after Capital One's renewed motion to dismiss highlighted the same deficiencies in the amended breach-of-contract claim that had plagued the initial one. But that motion is a day late and a dollar short. *See United States ex rel. Kramer v. Doyle*, No. 1:18-cv-373, 2024 WL 1242301, at *4 (S.D. Ohio Mar. 22, 2024) ("A plaintiff is not entitled to unlimited chances to amend." (cleaned up)); *see also Gavaldon v. Stanchart Sec. Int'l, Inc.*, No. 16-cv-590, 2018 WL 1470244, at *2 (S.D. Cal. Mar. 26, 2018) ("When the Court has previously pointed out pleading defects and the plaintiff has failed to correct them by amendment, the Court may assume that the plaintiff cannot successfully amend."). A contrary rule would permit a plaintiff to evade the res judicata effect of an unfavorable ruling on exactly the same allegations

previously raised and found wanting. *See Close v. Eldo Organic, LLC*, No. 2:22-cv-1630, 2022 WL 3053751, at *4 (S.D. Ohio Aug. 2, 2022) (explaining that a plaintiff's seeking voluntary dismissal of his claims "to avoid unfavorable rulings on those claims … would be an inappropriate basis for dismissal").

Accordingly, dismissal *with prejudice* is warranted for Andreae's breach-of-contract claim. Namely, Andreae's concession that his current breach-of-contract claim fails as a matter of law, (Doc. 35, #271–72), also constitutes a tacit admission that his initial breach-of-contract claim failed to state a claim for relief for the same reasons, considering the well-pleaded allegations relating to that claim in both complaints are identical. And his recognition that he has twice failed to raise a viable breach-of-contract claim, despite having more than one opportunity to address the deficiencies that Capital One challenges and that the Court identified, means the claim should be put to bed once and for all via a dismissal with prejudice. *Gavaldon*, 2018 WL 1470244, at *2. The Court will therefore grant Capital One's motion to dismiss Andreae's breach-of-contract claim with prejudice and, as a result, deny his Rule 21 motion as moot.

## CONCLUSION

As explained above, Andreae has not successfully amended his Complaint to state either a viable FCBA or breach-of-contract claim for relief against Capital One. So the Court **GRANTS** Capital One's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 31) and **DENIES AS MOOT** Andreae's Motion to Dismiss Count II of the Amended Complaint (Doc. 34). As a result, the Court **DISMISSES** the breach-

of-contract claim and the FCBA claim (under §§ 161 and 162 of the TILA) against Capital One (as well as all claims against Saks) **WITH PREJUDICE**. That leaves Andreae's TILA claim under § 133 against Capital One as the sole remaining live claim in this case.

    **SO ORDERED.**

| | |
|---|---|
| April 11, 2024 | |
| **DATE** | **DOUGLAS R. COLE**<br>**UNITED STATES DISTRICT JUDGE** |

16